IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 5:05-CR-0438-AA-4 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ann Aldrich |
| | ) | |
| VICTWAN DORSEY, | ) | Magistrate Judge David S. Perelman |
| | ) | |
| Defendant. | ) | |
| | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

This is a multi-defendant criminal case, in which the United States has charged defendant Victwan Dorsey ("Dorsey") with conspiracy to possess with intent to distribute cocaine and crack cocaine and possession of crack cocaine with intent to distribute. The government's core allegation is that Dorsey was to distribute the cocaine and crack cocaine in the Canton, Ohio area. Dorsey moved to suppress evidence obtained during a search of his residence at 405 Brown Ave., N.W. in Canton, Ohio [Docket No. 38]. The motion to suppress was referred to Magistrate Judge David S. Perelman [Docket No. 41], who submitted a Report and Recommended Decision ("R&R") [Docket No. 44] recommending that the motion be denied. For the following reasons, the court adopts the R&R and denies Dorsey's motion to suppress.

**I. Background**

Dorsey, a known associate of defendant Patrick Lawson ("Lawson"), was placed under surveillance by investigators while search warrants against Lawson's residence and business were being executed on August 10, 2005. Dorsey lived at 405 Brown Ave., N.W. in Canton, Ohio with Maurica Nash ("Nash"), the tenant listed on the lease for that residence. Earlier, on April 7, 2005, a confidential

informant had made a controlled purchase of drugs from Lawson, during which Lawson obtained the cocaine for that transaction at 405 Brown Ave., N.W.

When the search warrants against Lawson were executed, investigators seized firearms and a large amount of cash. During their subsequent surveillance of Dorsey's residence at 405 Brown Ave., N.W., investigators contacted Nash after she was seen leaving the residence. While Nash told the investigators that no one else was inside, the investigators looked through a window and saw Dorsey inside. The investigators also noted a strong odor of marijuana coming from the residence. Dorsey then emerged from the residence on his own and remained on the porch of the house. Nash then told officers that there was, in fact, marijuana inside the house but that there was nothing else. A police K-9 unit was brought in and it indicated the presence of narcotics in a car parked in front of Dorsey's residence. The car was registered to Dorsey. Neither Dorsey nor Nash consented to a search, but investigators obtained a search warrant from an Ohio Municipal Court Judge based on the foregoing facts, and seized approximately $16,000 in U.S. currency and approximately five grams of crack cocaine.

Dorsey then moved to suppress all evidence obtained at his residence, arguing that investigators had invaded his privacy by setting up surveillance of his residence, that he had been improperly detained on his porch while investigators sought a search warrant, and that there was insufficient probable cause to support a search warrant.

## II. Discussion

### A.    Surveillance of 405 Brown Ave., N.W.

Dorsey claims that the surveillance set up by investigators during the execution of search warrants against Lawson's residence and business violated his Fourth Amendment rights in some fashion. However, "the lawfulness of warrantless visual surveillance of a home has still been

preserved," and "visual observation is no 'search' at all." *Kyllo v. United States*, 533 U.S. 27, 32 (2001). Dorsey's only possible complaint arises out of the "security check" of the house that led officers to spot Dorsey, after he had failed to answer the door, in an upstairs window. Yet there is no Fourth Amendment violation in the officers' circling of Dorsey's residence, in their attempt to locate and question him. "[O]fficers must sometimes move away from the front door when they are attempting to contact the occupants of a residence. Generally, the subsequent discovery of evidence in plain view does not violate the Fourth Amendment." *United States v. Garcia*, 997 F.2d 1273, 1279 (9th Cir. 1993). Because the investigators had not, to that point, contacted Dorsey, they were entitled to circle the house in an attempt to locate and question him. After spotting Dorsey in an upstairs window, the officers did not enter the residence until they had procured a valid search warrant.

### B. Detention of Dorsey on His Porch

Dorsey next claims that the investigators violated his Fourth Amendment rights by not letting him leave his porch for nearly two hours, while a search warrant was obtained. Assuming that the officers did not allow him to leave the porch, Dorsey is correct in claiming that he was seized, and such a seizure would be unreasonable under the Fourth Amendment unless supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 699-700 (1981). While seizures to prevent flight are permitted, if the officers already possess a valid search warrant, detention to prevent flight without such a warrant does seem to violate the Fourth Amendment. *See id.* at 702. At the time Dorsey came onto his porch, the investigators had only three pieces of information supporting probable cause to detain Dorsey: (1) the discovery of cash and guns at Lawson's residence and business, when Dorsey was a known associate of Lawson's; (2) the April 7, 2005, controlled sale of drugs to a confidential informant where Lawson

had allegedly obtained the drugs for that transaction at Dorsey's residence; and (3) the odor of marijuana then emanating from Dorsey's residence.

Those facts do not seem to support probable cause for Dorsey's arrest, an assumption borne out by the actions of the investigators at the scene, who did not arrest Dorsey upon his exit from 405 Brown Ave., N.W. but instead waited for a search warrant and discovery of contraband materials inside the residence before doing so. The court therefore must conclude that the detention of Dorsey on his porch for nearly two hours, pending a search warrant for his residence, was unreasonable under the Fourth Amendment.

However, that unreasonable seizure does not require the court to exclude the evidence seized in the residence pursuant to the search warrant. While warrantless searches and seizures are per se unreasonable, there are a few exceptions, such as "searches and seizures to prevent the loss or destruction of evidence." *United States v. Radka*, 904 F.2d 357, 360 n.3 (6th Cir. 1990) (citing *Vale v. Louisiana*, 399 U.S. 30 (1970)). The need to prevent Dorsey or anyone else from re-entering the house and destroying potential evidence constitutes exigent circumstances that justify a warrantless seizure of the house pending a search warrant, a far less intrusive act than a warrantless search. *Radka*, 904 F.2d at 361; *Dixon v. Wallowa County*, 336 F.3d 1013, 1018 (9th Cir. 2003) ("Securing the . . . residence as a crime scene is a seizure subject to Fourth Amendment protection. Police may secure a home, even without a warrant, if exigent circumstances exist such that 'a reasonable person would believe that entry . . . was necessary to prevent the destruction of relevant evidence, or some other consequence improperly frustrating legitimate law enforcement efforts.'") (quoting *United States v. Alaimalo*, 313 F.3d 1188, 1192 (9th Cir.2002) (citation omitted)). Thus, the investigators would have been justified, once Dorsey emerged from the residence, in securing the residence and prohibiting Dorsey from re-

-4-

entering unless accompanied by an officer.  The only error was in preventing Dorsey from leaving the scene.

However, because no information was obtained pursuant to that unreasonable seizure of Dorsey, and because that seizure in no way affected the decision of the magistrate to issue the search warrant for 405 Brown Ave., N.W., the "independent source" rule applies.  *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) ("The independent source rule holds that evidence will be admitted if the government shows that it was discovered through sources 'wholly independent of any constitutional violation.'") (citing *United States v. Leake*, 95 F.3d 409, 412 (6th Cir.1996) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984))).  As the detention of Dorsey on his porch did not affect the later search of his residence in any way, the court holds that the search is "wholly independent of any constitutional violation."  *Id.*

Instead, "the question is whether application of the exclusionary rule to the [evidence] would put the police in the same, but not a worse, position than they would have been absent any error or misconduct.")  *Id.* (citing *Nix*, 467 U.S. at 443).  As discussed above, the only error was to prevent Dorsey from leaving the scene; the only effect of that error was to prevent Dorsey from fleeing.  Thus, because "it would put the police in a worse position, in that the [evidence] was nonetheless discovered through sources 'wholly independent of any constitutional violation,' . . . the independent source doctrine applies" and the evidence may be admitted.  *Id.* (citing *Leake*, 95 F.3d at 412; *Murray v. United States*, 487 U.S. 533, 541 (1988)).

### C. Probable Cause for the Search Warrant

Dorsey's final challenge is that insufficient evidence supported the finding of probable cause underlying the search warrant. In determining whether sufficient probable cause exists to issue a search warrant, a magistrate must "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That decision is afforded "great deference by the reviewing court," and a decision to grant a search warrant "should only be reversed if it was arbitrarily exercised." *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (citations omitted).

In this case, probable cause for a search of Dorsey's residence certainly existed, even if probable cause for a seizure of Dorsey himself did not, not least because Nash admitted to the investigators that marijuana was present inside. Dorsey attempts to argue that probable cause for a "minor misdemeanor marijuana violation" is insufficient to justify the discovery of the crack cocaine. However, Dorsey confuses the standard - the police only need probable cause to search a particular location; once that probable cause is obtained, whatever is found at that location, whether it is evidence further supporting initial suspicions or evidence of a completely separate criminal enterprise, is admissible. Dorsey's argument would have the court exclude a dead body discovered by police while executing a valid search warrant supported by probable cause that marijuana was present. Neither common sense nor the case law compels that result.

### III. Conclusion

For the foregoing reasons, the court adopts the R&R [Docket No. 44] and Dorsey's motion to suppress [Docket No. 38] is denied.

IT IS SO ORDERED.

    /s/ Ann Aldrich
ANN ALDRICH
**Dated: December 6, 2005**    UNITED STATES DISTRICT JUDGE